263 A.2d 692.

In the Matter of Rhode Island Bar Association.

MARCH 26, 1970.

PAOLINO, J. On July 7, 1969, the Rhode Island Bar Association filed a petition in this court requesting the court to promulgate a rule or order authorizing attorneys at law admitted to practice before the court to engage in the practice of law in the form of professional service corporations as provided by the professional service corporation law, G. L. 1956, chapter 5.1 of title 7, as enacted by P. L. 1964,

chap. 185, sec. 1 (as amended by P. L. 1968, chap. 236, sec. 1, and P. L. 1969, chap. 163, sec. 1).

On the same day we entered an order directing petitioner to insert or cause to be inserted an order of notice in two newspapers of statewide circulation directed to the members of the Rhode Island bar and to any and all persons interested in the petition inviting them to file, within 50 days of the order, written memoranda setting forth reasons or grounds, if any, why this court should not enter an order or ruling as requested by petitioner. The order also provided that petitioner would have 20 days thereafter in which to file a memorandum in support of the petition.

Charles H. Drummey, a member of the Rhode Island bar, filed a brief in opposition to the petition, and Lester H. Salter, also a member of the Rhode Island bar, filed a brief on behalf of the petitioner in support of the petition. On December 5, 1969, we heard oral arguments, and thereafter, at our request, Mr. Salter filed a supplemental memorandum.

Before discussing the pros and cons of petitioner's request, it may be illuminating to set forth certain well-established concepts which have a direct bearing here with respect to the practice of law and the admission and control of attorneys.

In *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n,* 55 R. I. 122, 179 A. 139, the court pointed out that "The practice of law is affected with a public interest," and that "This court, by the Constitution, Art. X, sec. 1 and Art. XII, sec. 1 of Amendments, has had imposed upon it the duty of protecting the public in the administration of justice."[1] *Id.* at 131 and 132, 179 A. at 143. The court also

---

[1]Article X, section 1 of the Rhode Island constitution vests the judicial power of this state in "* * * one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish."

Article XII, section 1 of amendments gives to this court "* * * final revisory and appellate jurisdiction upon all questions of law and equity."

stated that it alone had the power to license attorneys and counsellors at law in the courts of this state and to admit them to the practice of law; that in Rhode Island, at least since the adoption of the state constitution, such power has been vested in this court; and that the General Assembly had conceded this in G. L. 1923, chap. 322, §2 (now G. L. 1956, §8-1-2), where it declared that "The supreme court * * * shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state." In referring to the quoted statutory language of §8-1-2, the court said:

> "This language has long been accepted by common consent to be declaratory of the power inherent in this court to control and supervise the practice of law generally whether in or out of court. A careful examination of the public laws, even before the adoption of the constitution, and as far back as the year 1800, fails to reveal any enactment of the general assembly assuming to regulate the matter by statute. On the other hand, there is ample evidence of the exercise of this power as a matter of course by the Superior Court of Judicature established in 1746-47 which was the predecessor of this court until 1798, when it became the Supreme Judicial Court." *Id.* at 129-130, 179 A. at 142.

The court further noted that the power of the court to regulate and control the practice of law remained where it had always been, notwithstanding the exercise by the General Assembly of its undoubted power to declare acts of unauthorized practice illegal and punishable by fine or imprisonment, or both, and it held that the enactment of the legislation involved in that case relating to the practice of law was in aid of the authority of this court in the regulation and control of the practice of the law, and not subversive to it. *Id.* at 127, 179 A. at 141. The court also held that the authority to admit to the bar and to disbar necessarily carries with it power to define what constitutes the

practice of law and to exclude unauthorized persons therefrom. *Id.* at 130-131, 179 A. at 142.

The professional service corporation law, hereinafter sometimes referred to as the act, provides in §7-5.1-1 that, except as otherwise provided, "* * * all provisions of the general corporation law applicable to domestic business corporations shall be applicable to corporations organized under this chapter." Section 7-5.1-3 reads:

> "Any corporation organized under this chapter may engage in rendering professional services[2] of only one (1) of the professions enumerated in §7-5.1-2, provided that every officer, director, and shareholder of said corporation is an individual authorized to practice such profession and is actively employed by the corporation in such practice. No such individual may be an officer, shareholder, director or employee of any other corporation engaged in the practice of the same profession."

The act provides a procedure, purely optional to members of the bar of this state, to practice their profession in a corporate form. For a discussion of practice by professional service corporations, see 7 Am. Jur.2d, *Attorneys At Law* §85. Under G. L. 1956, §11-27-5, no person except a duly admitted member of the bar of this state, in good standing, can practice law in Rhode Island. Absent express statutory authority, the so-called "learned professions" have not been permitted to practice in the corporate form. See 19 Am. Jur.2d, *Corporations* §1052; 7 Am. Jur.2d, *Attorneys At Law* §83. Prior to the enactment of the professional service corporation law, the practice of law by a corporation was expressly prohibited in Rhode Island. G. L.

---

[2]"Professional services," as defined by §7-5.1-2, means "the rendering of personal services by a person authorized to practice as one of the following professions as defined in the general laws: * * * (3) attorneys-at-law * * * ." The same section goes on to define "authorized to practice" to mean "duly licensed, certified or registered by the proper regulatory agency," and "regulatory agency" to mean "the supreme court when referring to attorneys-at-law."

1956, §11-27-15; *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n, supra,* at 136-137, 179 A. at 145. The statutory prohibition was repealed by P. L. 1964, chap. 186, sec. 2.[3] We do not question the authority of the General Assembly to enact legislation regulating the organization and operation of corporations. It must be assumed, however, that in enacting the professional service corporation law, the General Assembly was cognizant of the decision of this court in *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n, supra,* and recognized the inherent and exclusive power of this court to license attorneys at law, to admit them to practice, and to control the practice of law generally. In fact, this assumption is supported by the language of §7-5.1-10 which provides:

> "Nothing contained in this chapter shall be interpreted to abolish, repeal, modify, restrict, or limit the powers of any state regulatory agency,[4] to regulate the conduct of professional services pursuant to law."

In recognition of the power of this court to regulate the practice of law and to license attorneys and admit them to the practice of law, the Rhode Island Bar Association filed this petition for permission for lawyers to incorporate.

The principal reason advanced as motivating attorneys to seek practice in the corporate form is the possible economic benefits offered by various provisions of federal tax law to corporations and their employees,[5] but not to self-

---

[3]This section reads:

"This act [professional service corporation law] shall take effect upon its passage, and all acts and parts of acts inconsistent herewith are hereby repealed."

[4]Section 7-5.1-2 defines "regulatory agency" to mean "the supreme court when referring to attorneys-at-law."

[5]On August 8, 1969, the Internal Revenue Service conceded, after suffering a long line of court defeats, that professional service corporations and associations were corporations for tax purposes. T.I.R.-1019.

With the exceptions of Iowa, New York and Wyoming, all states have passed some form of professional corporation or association act.

employed persons or to partnerships. As pointed out by petitioner, such benefits include tax-qualified pension and profit-sharing plans, tax-free death benefits for employees' beneficiaries and tax-free group life insurance, wage continuation and accident and health plans. Other reasons for incorporation are of a non-tax nature, such as limited liability for the torts of associates and the debts of the corporation, continuity of life of the corporate entity, and the ease of transferring ownership interests.[6] See *In the Matter of The Florida Bar*, 133 So.2d 554 (Fla. 1961).

The petitioner states that over the years, efforts to achieve the benefits listed above by other methods have not proved satisfactory. It refers specifically to the "Self-employed Individuals Tax Retirement Act of 1962," sometimes referred to as "H R 10" or the "Keogh Act."

The professional service corporation law in this state was enacted for the purpose of enabling members of the covered professions, not previously allowed to incorporate, to form corporations, thus putting such members on an equal footing with other taxpayers.

The usual reasons put forth against the practice of law as a corporate entity are that the relationship of attorney and client is one of trust and confidence in the highest degree, that such a relationship calls for strict regulation of the admission of attorneys so as to insure that only persons having the qualifications of character, integrity and learning shall be permitted to practice, that only natural persons can conform to such exacting requirements, and that when

---

[6]For a thorough analysis of professional service corporations and for a good bibliography of articles on the subject, see Bittker, *Professional Service Organizations: A Critique of the Literature*, 23 Tax L. Rev. 429 (1968). See also Bittker, *Professional Associations and Federal Income Taxation: Some Questions and Comments*, 17 Tax L. Rev. 1 (1961); Eaton, *Professional Corporations and Associations in Perspective*, 23 Tax L. Rev. 1 (1967); and O'Neill, *Professional Service Corporations: Coping with Operational Problems*, 31 J. Taxation 94 (1969).

an attorney is employed by a corporation his first allegiance is to his corporate employer and not to his client. See *People* v. *Merchants Protective Corp.,* 189 Cal. 531, 209 P. 363, and *Opinion of the Justices,* 289 Mass. 607, 194 N. E. 313. See also Jones, *The Professional Corporation,* 27 Fordham L. Rev. 353, 354-355 (1958). In *In re Co-operative Law Co.,* 198 N. Y. 479, 92 N. E. 15, cited with approval by the court in *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n, supra,* at 136-137, 179 A. at 145, the New York court, in speaking of corporations organized under general business corporation statutes to practice law, said: "* * * The corporation might not have a lawyer among its stockholders, directors or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud * * *." 198 N. Y. at 484, 92 N. E. at 16.

After a careful analysis of the arguments set forth in the briefs, it is the judgment of this court that the request of the petitioner should be granted subject to the condition that any corporation organized pursuant to the professional service corporation law must, before it commences to practice, apply for and receive from this court, or from any committee or board appointed by it, a license to practice, and subject also to the condition that such corporation comply with all rules, regulations and orders issued by this court regulating the practice of law.

We are persuaded that the Rhode Island act, in a substantial way, answers satisfactorily all of the objections heretofore expressed by courts against the practice of law in corporate form. The act does not permit ordinary business corporations to practice law; only corporations organized under the act are permitted to do so. This court, under its inherent power to regulate and control the practice of law and to license and admit attorneys to practice, will

have absolute control over such corporations by requiring that corporations so organized obtain from this court a license to practice law.

Furthermore, only attorneys admitted to practice by this court will be permitted to render professional services. Thus, only natural persons previously found by this court to possess the necessary qualifications of character, integrity and learning can render legal services and only such persons can be officers, shareholders or directors of the corporation under the act. In addition, every officer, director and shareholder of the corporation will have to be actively engaged in the practice of law, and they can be interested in only one such corporation. All of the lawyers and the corporation itself will be subject to the disciplinary powers of this court and no other agency will have regulatory powers over the attorney or the corporation; nor will the General Assembly have the authority under any provision of the general business corporation statute to enact any legislation that would be subversive of the power of this court to regulate and control the practice of law and the conduct of attorneys at law.

Under the act, which is in aid of the court's authority and not in derogation of it, the relationship of attorney and client remains as it has been and is no different than that existing between any attorney who is a member or employee of a partnership and the client for whom he performs services. The personal responsibility of the attorney to his client is the same as under present law. Nothing in the act restricts or limits such responsibility. The only substantial change made by the act from practice of law in partnership form is that there will be limited liability in that the lawyer-shareholders who do not participate in the rendering of the services out of which an actionable wrong arises will be free from personal liability and will not be responsible for the debts of the corporation. Be-

cause of the requirement of mandatory liability insurance, the clients served by the corporation and the members of the public who otherwise deal with the corporation will not suffer by reason of such limited liability. Moreover, in addition to the liability and responsibility of the individual lawyer or lawyers, the corporate entity will be liable for the misprisions of its members to the extent of the corporate assets.

We believe that a corporation organized and operating under the foregoing standards preserves for the client, and for the public generally, all of the traditional obligations and responsibilities of the lawyer while at the same time enabling the members of the bar to obtain benefits not otherwise available to them. This conclusion is supported by and consistent with *Opinion 303 of the Committee on Professional Ethics of the American Bar Association* (dated November 27, 1961, and reported at 48 A.B.A.J. 159), where the question—Can lawyers carry on the practice of law as a professional association or professional corporation, which has the characteristics of limited liability, centralized management, continuity of life, and transferability of interests, without being in violation of one or more of the Canons of Ethics?—was answered in the affirmative provided the following safeguards were observed.

(1) The lawyer or lawyers rendering the legal services to the client must be personally responsible to the client, and restrictions on liability as to other lawyers in the organization must be made apparent to the client.

(2) Centralized management must be by lawyers exclusively.

(3) Continuity of life must be attained by such restrictions on transferability of interests as may be essential to avoid ethical objections.

(4) There can be no practice of law under a form of organization that would permit the transfer of a lawyer's interest in the organization to a non-

lawyer, so as to give the non-lawyer a permanent beneficial and voting interest in a going and continuing organization engaged in the practice of law.

The opponent to the petition argues that the act violates art. III and art. X, sec. 1, of the state constitution and art. XII, sec. 1, of amendments, and is repugnant to certain statutes enacted in support of and consistent with the constitution. As we understand his argument, his reference is to G. L. 1956, §§8-1-2, 11-27-2 and 11-27-18. We do not agree with this argument. The act, as we have pointed out, is not compulsory; it is in aid of the authority of this court, and not subversive of it; it merely provides a method by which members of the bar, with the permission of the court, may organize under the act and practice law in corporate form under the conditions and safeguards discussed earlier in this opinion. We find no violation of the separation of powers guaranteed by art. III nor any interference with the inherent powers of this court relating to the practice of law.

The opponent next contends that this court should not grant the petition after the General Assembly has acted and professional service corporations are already authorized by statute; that, because attorneys are already licensed to practice as individuals, authorizing practice as a corporation adds nothing to their status unless, as a corporation, the practice of law by corporations is to take on an entirely new and different status; that, if this is so, the court is entitled to have the new status spelled out by the petitioner; that if the court acknowledges the power of another department of government to license any person, corporate or individual, the court is admitting that it is not the sole repository for licensing and regulating the practice of law; and, finally, that if the court grants the petition it is resigning its unique position as the sole authority in the li-

censing and regulation of the practice of law. These arguments have no foundation in law.

The power to license remains where it has always been, in this court. The act bestows no license to practice law. The status of any corporation organized under the act is well defined in the act and can only come into being as a practicing corporate entity by permission of this court, subject to its rules and regulations, and after obtaining from this court a license to practice law in corporate form. The profession will not become a mere business operation or commercial venture. Under the strict direction and control of this court, and in keeping with the highest traditions of the bar, it will continue to dedicate itself to the administration of justice in accordance with the oath or affirmation taken by every person seeking admission to the bar of this state. In substance, insofar as the relationship of attorney and client and of attorney and the general public is concerned, practice in corporate form will be, as we have previously pointed out, substantially similar to the practice of law as it presently exists in firms operating as law partnerships.

It is not within the province of this court to decide what standards the Internal Revenue Service will apply from time to time in determining the classification to which an organization must belong for purposes of taxation. This power to promulgate regulations establishing standards by which various organizations would be categorized for purposes of taxation belongs to the Internal Revenue Service and therefore requires no further discussion by us.

For the reasons stated, the petition is granted. The petitioner shall prepare and submit to this court for its approval a set of rules in accordance with this opinion for the regulation of attorneys practicing as professional service corporations.

*Salter and McGowan, Lester H. Salter,* for Rhode Island Bar Association.

*Charles H. Drummey,* in opposition to petition of Rhode Island Bar Association.